DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} In this original action in mandamus, relator, Peggy Shelton-Collins, requests a writ of mandamus that orders respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated relator's temporary total disability ("TTD") compensation based on the commission's finding that she had reached maximum medical improvement ("MMI").
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate determined that Dr. David C. Randolph, in his report finding MMI, acknowledged all of the allowed conditions in relator's claim. However, the magistrate also determined that the report of Dr. Randolph could not constitute some evidence upon which the commission could rely in reaching its decision, as the report was equivocal. Accordingly, the magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate its order terminating relator's TTD and to reconsider the matter without relying on Dr. Randolph's report. Both relator and respondent employer, The United States Playing Card Company ("USPC"), have filed objections to the magistrate's decision, and the matter is now before this court for a full, independent review.
 {¶ 3} By its objections to the magistrate's decision, respondent USPC argues that the magistrate incorrectly determined that Dr. Randolph's report was equivocal. USPC argues that the magistrate's reliance on State ex rel. Eberhardt v. FlxibleCorp. (1994), 70 Ohio St.3d 649, was misplaced. UnderEberhardt, equivocal medical opinions are not evidence, and "equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." Id. at 657.
 {¶ 4} Contrary to USPC's arguments on this issue, we concur with the analysis of the magistrate. Based on our review of Dr. Randolph's report, we also find that it was equivocal, and therefore did not constitute "some evidence" pursuant toEberhardt. Specifically, we find that Dr. Randolph's determination that relator had certain temporary restrictions is in conflict with his finding that relator has also reached MMI. Thus, we overrule respondent USPC's objections to the magistrate's decision.
 {¶ 5} Under her objections to the magistrate's decision, relator argues that the magistrate incorrectly determined that Dr. Randolph, in his report finding MMI, acknowledged all the allowed conditions in the claim. Relator contends that the magistrate erroneously relied on State ex rel. Middlesworth v.Regal Ware, Inc. (2001), 93 Ohio St.3d 214, in her analysis of the issue of whether Dr. Randolph considered all the allowed conditions in the claim. Relator also contends that Dr. Randolph "repudiates the claim and the conditions that have been allowed in it." (Relator's objection to the magistrate decision, at 2.) We disagree. Despite Dr. Randolph's skepticism as to whether the claim should have been originally allowed, he nevertheless considered, in reaching his MMI determination, all the allowed conditions in the claim. Notably, in his report, Dr. Randolph indicated:
* * * [T]he soft tissue injuries (strains) allowed in this claim ong ago resolved. * * * Clearly, a "disc desiccation", which ay have been associated with the event in this claim, has resolved. The claimant has reached maximum medical improvement, with respect to those conditions listed as being legally allowed in this claim.
We concur with the magistrate's discussion and conclusion on this issue, and therefore overrule relator's objections to the magistrate's decision.
 {¶ 6} Upon our independent review of the record, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we hereby grant a limited writ of mandamus ordering the commission to vacate its order terminating TTD compensation and to reconsider the matter without relying on Dr. Randolph's report.
Objections overruled; limited writ granted.
Lazarus, P.J., and Bryant, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Peggy Shelton-Collins, : Relator, : v. : No. 03AP-1049 The United States Playing Card Company : (REGULAR CALENDAR) and Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 31, 2004 Lisa M. Clark, for relator.
Dinsmore Shohl, LLP, Christopher A. Benintendi andJennifer L. Chesser, for respondent The United States Playing Card Company.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, Peggy Shelton-Collins, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her request for authorization for the medication Meridian, finding that she had reached maximum medical improvement ("MMI") and terminating her temporary total disability ("TTD") compensation as of April 2, 2003, the date of the district hearing officer hearing.
 {¶ 8} Findings of Fact:
 {¶ 9} 1. Relator sustained a work-related injury on November 27, 2001, and her claim has been allowed for: "lumbar strain; cervical strain; disc desiccation L5-S1."
 {¶ 10} 2. On August 30, 2002, respondent The United States Playing Card Company ("employer") filed a motion seeking to terminate relator's TTD compensation based upon the August 6, 2002 report of Dr. David C. Randolph.
 {¶ 11} 3. In his August 6, 2002 report, Dr. Randolph noted that relator had the following allowed conditions: "lumbar strain, cervical strain, disc desiccation L5-S1." Thereafter, Dr. Randolph noted the other medical evidence before him as well as relator's job description. On physical examination, Dr. Randolph noted that relator had "diffuse tenderness across the lower lumbar spine" which "is present to light digital palpation." Dr. Randolph then noted his physical findings with regard to his examination which included range of motion of her cervical spine and lumbar spine, grip strength testing, straight leg raise testing, deep tendon reflexes, motor strength testing, as well as certain other tests. He noted his physical findings in his report. Thereafter, in his discussion and opinion, Dr. Randolph noted the following regarding whether relator could return to her former position of employment or other employment which she had been given to do in the past and noted as follows:
The claimant indicates that her previous employment involved "final inspection" of casino cards. This required her to sit most of the time with no bending, twisting or stooping. She was required to lift and carry objects weighing up to 5 pounds. I see no reason that this claimant could not return to that work, based upon her subjective complaints and objective physical examination.
With respect to the job known as "wrapping/finishing", it is my opinion that she would not be capable of performing those tasks. Her job restrictions, at this point, would involve the capabilities of changing positions as needed with minimal bending, twisting and stooping. It is my opinion she can lift and carry objects weighing up to 10 pounds for short distances. Itis my opinion these restrictions are temporary.
(Emphasis added.)
 {¶ 12} Dr. Randolph then concluded that relator had reached MMI with respect to the conditions listed as being a sole result of this injury. In his conclusions, Dr. Randolph made the following comments:
Nevertheless, it is quite clear that the soft tissue injuries strains) allowed in this claim long ago resolved. As the MRI can, performed in January of 2002, showed moderate disc desiccation and such changes require years to develop, it is quite clear that this "disc desiccation at L5-S1" did not occur as a consequence of the event in question. This comment is not meant to be disrespectful of the legally allowed conditions in this claim, but rather is meant for explanatory purposes. Clearly, a "disc desiccation", which may have been associated with the event in this claim, has resolved. The claimant has reached maximum medical improvement, with respect to those conditions listed as being legally allowed in this claim.
D). It is to be noted that this claimant's physical presentation is fraught with inconsistencies and signs of symptom magnification. Her neurologic examination is, and always has been, normal. * * *
* * *
Again, it is to be noted that there are no records from the motor vehicle accident occurring on 08/31/01. * * *
As outlined above, the degenerative disc disease noted at L5-S1, in the MRI scan, would have required years to develop. It is my opinion that the disc desiccation at L5-S1 is not related to the event in question.
I am unable to justify, from these documents, that any clear injurious event occurred on 11/27/01, noting attention to the fact that there is a wide variety in the mechanics of the onset of her complaints. The claimant herself does not indicate that any specific injurious event occurred, merely that she had pain, which was "increasing" in her low back after her return to work.
* * *
As no clear injurious event is described, I am unable to justify a diagnosis associated with the event of 11/27/01.
* * *
It is my opinion that whatever may or may not have occurred on 11/27/01 was historically distorted and not substantiated in these records.
 {¶ 13} Dr. Randolph then indicated that relator's treatment should continue as follows:
It is my opinion that the best treatment for the claimant, at this time, is to continue a home exercise program, taper her narcotic medications, begin an active weight loss program and return to work with restrictions as outlined above, at the earliest possible convenience, to avoid the unfortunate occurrences sometimes associated with prolonged disability without objective abnormalities.
 {¶ 14} 4. On December 3, 2002, relator filed a C-86 requesting that the employer be ordered to pay for medical services prescribed by Dr. Neal Jobalia including the following:
* * * The injured worker requests that she be allowed to complete a series of transferaminal epidural injections and lumbar steroid injections, the injured worker further requests authorization for the prescription medication Meridia[n] which will be used to assist the injured worker in reducing weight which will in turn reduce the stress in her lower back. * * *
 {¶ 15} 5. The motions were heard before a district hearing officer ("DHO") on April 2, 2003. The DHO granted relator's request for epidural steroid injections requested by Dr. Jobalia. However, the DHO denied relator's request for the medication Meridian because there was no narrative report in the file explaining the necessity of this medication. The DHO also concluded that relator had reached MMI and that her TTD compensation should be terminated based upon the report of Dr. Randolph.
 {¶ 16} 6. Relator appealed and submitted the August 5, 2003 report of Dr. Jobalia wherein he noted as follows:
* * * Currently[,] my treatment plan would involve repeating injections that have been helpful in the past. I think that it is imperative that she remain active and the epidural injections do allow her to remain active and maintain an exercise regimen. Dr. Kahn's dictation about surgery did state that if all conservative means fail, and she is able to lose a significant amount of weight, she may be a surgical candidate at that point. However, due to her current obesity, she would not be a good candidate for surgery. I think that anatomically in her spine she is a surgical candidate; however, because of other factors, surgery would not be appropriate at this time. The goal would be to help her lose weight and improve her condition. Any time anybody has any type of lumbar or cervical spine problem and is obese, their obesity will exacerbate the problem due to the mechanics of the amount of weight that is being carried by the spine. Clearly[,] losing weight would help her tremendously with her current symptomatology and her future treatment. * * *
 {¶ 17} In his letter, Dr. Jobalia noted that relator had a functional capacity evaluation on October 25, 2002, wherein it was determined that the findings were consistent with relator's complaint; however, that evaluation is not in the record.
 {¶ 18} 7. The appeal was heard before a staff hearing officer ("SHO") on August 27, 2003, and resulted in an order affirming the prior DHO order in all respects.
 {¶ 19} 8. Further appeal was refused by order of the commission mailed October 1, 2003.
 {¶ 20} 9. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 21} Conclusions of Law:
 {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 23} In this mandamus action, relator does not challenge the commission to deny her request authorizing her to receive the medication Meridian for weight loss. Relator challenges the commission's finding that she had reached MMI for the allowed conditions based upon the report of Dr. Randolph and the fact that the commission terminated her TTD compensation based upon that finding.
 {¶ 24} Entitlement to TTD compensation is governed by R.C.4123.56, which also provides for circumstances under which compensation is to be terminated. The circumstance at issue in the instant case is whether relator's temporary disability has become permanent. See State ex rel. Ramirez v. Indus. Comm.
(1982), 69 Ohio St.2d 630. The term "permanent" has been defined as a condition which will with reasonable probability continue for an indefinite period of time without any present indication of recovery therefrom. Vulcan Materials Co. v. Indus. Comm.
(1986), 25 Ohio St.3d 31. Supplementing R.C. 4123.56 is Ohio Adm. Code 4121-3-32(A)(1) which defines maximum medical improvement as:
* * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
 {¶ 25} In asserting that the commission abused its discretion in the instant case, relator contends that the report of Dr. Randolph cannot constitute some evidence upon which the commission relied because Dr. Randolph did not accept the allowed conditions in her claim and did not accept that a work-related injury actually occurred on November 27, 2001. Because Dr. Randolph did not accept that relator had the allowed conditions and because he did not accept that any injury occurred at work, relator contends that the commission abused its condition by relying upon his report.
 {¶ 26} In reviewing Dr. Randolph's report, this magistrate specifically notes that, both at the beginning of the report and at the beginning of his discussion and opinion section, Dr. Randolph specifically and correctly identified the allowed conditions in relator's claim. Thereafter, Dr. Randolph did, on several occasions, reiterate that relator had been involved in an automobile accident in August 2001 and that there were no records relating to those injuries for him to review. Furthermore, Dr. Randolph did indicate that relator's physical presentation is "fraught with inconsistencies and signs of symptom magnification." Dr. Randolph then opined that, in his opinion, the disc desiccation at L5-S1 is not related to the event in question. Lastly, Dr. Randolph did state that he is unable to justify a diagnosis associated with the event claimed to have occurred on November 27, 2001. However, in spite of his statements that he did not believe that all of these injuries occurred as a result of a work accident on November 27, 2001, Dr. Randolph did indicate that "the soft tissue injuries (strains) allowed in this claim long ago resolved. * * * Clearly, a `disc desiccation', which may have been associated with the event in this claim, has resolved. The claimant has reached maximum medical improvement, with respect to those conditions listed as being legally allowed in this claim."
 {¶ 27} In State ex rel. Middlesworth v. Regal Ware, Inc.
(2001), 93 Ohio St.3d 214, 215-216, the claimant challenged the commission's denial of his application for permanent total disability compensation based upon the commission's reliance on the report of Dr. Demeter. In Middlesworth, the court stated:
This controversy centers on Dr. Demeter's conclusion that "[a]t the present time I find no evidence to support the claim of interstitial pulmonary fibrosis with bilateral apical lung disease." The court of appeals interpreted this language as the doctor's refusal to accept the claim's allowed conditions. We disagree. Instead, we find our opinion in State ex rel.Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693, * * * to be dispositive.
In Domjancic, an examining physician noted "[n]o evidence of a herniated disc L4-5 on the right" — the claim's allowed condition. That claimant, in turn, offered the very argument that Middlesworth presents. In rejecting that position, theDomjancic court concluded that "Dr. Gonzalez's report, at the outset, outlines all allowed conditions, substantiating his awareness of what the claimant's recognized conditions were. That the doctor, upon examination, found no evidence of a herniated disc, does not amount to a repudiation of the allowance. As the referee insightfully stated:
"`Dr. Gonzalez was not required to merely parrot the allowed conditions as his medical findings. It was Dr. Gonzalez's duty to report his actual clinical findings. Obviously, the doctrines ofres judicata and collateral estoppel do not apply to limit what a doctor may find during his examination.'" (Emphasissic.) Id. at 695-696 * * *.
Obviously, Dr. Demeter knew that a pulmonary condition was at issue. He referred to "interstitial lung disease" three times in his report. "Interstitial fibrosis" and "interstitial infiltrates" are also mentioned, and again, the allowance is quoted verbatim in his report. However, according to Dr. Demeter, the condition no longer existed. This is not a situation where the doctor acknowledged the condition's existence but refused to accept the commission's prior determination of industrial causal relationship. In this case, it is immaterial whether Dr. Demeter believed that the claim was correctly or incorrectly allowed years ago. What matters is how the condition was affecting claimant's ability to work at the time of the examination, and Dr. Demeter found no impact. Accordingly, the commission, as the sole evaluator of evidentiary weight and credibility, did not abuse its discretion in citing Dr. Demeter's report as "some evidence" of a capacity for sustained remunerative employment. * * *
(Emphasis sic.)
 {¶ 28} In the present case, Dr. Randolph clearly indicated in his report that the industrial claim is allowed for "lumbar strain; cervical strain; disc desiccation L5-S1." Dr. Randolph evaluated relator with those allowed conditions in mind and he also reviewed all the medical evidence before him including the historical account relating to relator's August 2001 automobile accident. With regard to the conditions of lumbar strain and cervical strain, Dr. Randolph specifically noted that those soft tissue injuries would have been expected to have reached MMI by this point in time. While Dr. Randolph did indicate that the condition disc desiccation L5-S1 would have taken time to develop and that he would not agree that it was related to the event in question, Dr. Randolph nevertheless considered that allowed condition and found that, given the time which had past, that condition would have resolved as well. As such, this magistrate finds that, even though Dr. Randolph specifically indicated that he did not believe that the allowed condition of "disc desiccation L5-S1" was directly related to the industrial injury, he nevertheless opined that, if this was associated with the industrial injury, relator had reached a level of MMI as to this allowed condition as well as the lumbar strain and cervical strain. As such, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in this regard.
 {¶ 29} However, upon review of Dr. Randolph's report, the magistrate notes that, for a different reason, his report cannot constitute some evidence upon which the commission could rely. Dr. Randolph indicated that relator had certain restrictions due to the allowed conditions and that these restrictions were temporary. He also concluded that relator had reached MMI. Dr. Randolph's opinion that relator's restrictions are temporary is in conflict with his opinion that she has also reached MMI. His report is equivocal and cannot constitute some evidence. Stateex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 549.
 {¶ 30} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in finding that she had reached MMI based upon the report of Dr. Randolph as this magistrate concludes that Dr. Randolph did acknowledge all of the allowed conditions and did determine that, in spite of the fact he did not believe that the industrial injury caused all the allowed conditions, that those allowed conditions had, nevertheless, reached MMI. However, because the magistrate finds that the report of Dr. Randolph is equivocal, this court should issue a writ of mandamus ordering the commission to vacate its order and reconsider the matter without relying on Dr. Randolph's report.
 /s/ Stephanie Bisca Brooks 
STEPHANIE BISCA BROOKS MAGISTRATE